```
             UNITED STATES DISTRICT COURT
            SOUTHERN DISTRICT OF MISSISSIPPI
                     WESTERN DIVISION

ADAMS COUNTY WATER ASSOCIATION, INC.                       PLAINTIFF

VERSUS                            CIVIL ACTION NO. 5:10CV199-DCB-RHW

CITY OF NATCHEZ, MISSISSIPPI, et al.                      DEFENDANTS
```

## OPINION AND ORDER

On May 28, 2013, this Court held a hearing on the pending motions for summary judgment [**docket nos. 110, 136, 143, 153**] at the United States Courthouse in Natchez, Mississippi. Having reviewed the arguments and testimony presented by both sides in light of their respective summary-judgment requests, and having carefully considered relevant statutory and case law as it applies to those requests, the Court will deny all parties' motions in all respects with one exception. However, the Court adds that, for the reasons discussed below, it does not appear that an order or judgment addressing the sewer-effluent issue will be necessary or appropriate in this case. Nevertheless, the Court will hold this issue in abeyance as this case proceeds to trial. After hearing all the evidence related to the Defendants' actual or imminent provision of water services in Adams County Water's certificated areas, the Court will determine the relief, if any, to which Adams County Water is entitled.

## ANALYSIS

### I. The Defendants' Motion and Justiciability

At the hearing, Adams County Water made it clear that it

wants declaratory or injunctive relief indicating that the Defendants may not provide sewer effluent in its certificated areas. In response, the Defendants assert that it would be error to grant Adams County Water its requested relief because this Court does not have jurisdiction over the issue. The Defendants frame the dispute as one of "mootness." See Def.s' Br. at 3, docket no. 3. But having given careful consideration to the Defendants' jurisdictional concerns, the dispute is better expressed in terms of standing, which is closely related to the doctrine of mootness. See U.S. Parole Comm'n v. Geraghty, 445 U.S. 388, 397 (1980) (quoting Henry P. Monaghan, Constitutional Adjudication: The Who and When, 82 Yale L.J. 1363, 1384 (1973)); see also Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 190 (2000).

"In order for a plaintiff to have sufficient standing under Article III, that plaintiff must show that: he has suffered or will suffer an injury, his injury is traceable to the defendant's conduct, and a favorable federal court decision will likely redress the injury." Samnorwood Indep. School Dist. v. Texas Educ. Agency, 533 F.3d 258, 264-65 (5th Cir. 2008). Applying the first prong of this test to the facts in the case, Adams County Water has not convinced the Court that (1) it *has suffered harm* as a result of any discussions the Defendants had with Rentech about the provision of sewer effluent in Adams County Water's certificated areas or (2)

2

*will suffer any harm* if the Court refrains from issuing an injunction related to the provision of sewer-effluent services in its certificated areas. Therefore, Adams County Water has not convinced the Court that it has standing to seek its requested relief.

To begin, Adams County Water clearly does not have standing to recover for a § 1926(b) violation for harm associated with the Rentech discussions inasmuch as the Defendants did not violate that statute by engaging in exploratory discussions with Rentech. At the hearing, Adams County Water suggested that a prospective injunction is appropriate because it has already suffered real harm as a result of the Defendants' discussions with Rentech. Specifically, its expert testified that the discussions were "damaging to everybody's credibility, and it's damaging to the whole county's economic development efforts. It causes confusion and consternation, bad feelings and everything." Hr'g Tr. at 43. Adding to this, Adams County Water's representative testified that having to negotiate with Rentech while the Defendants were also involved in sewer-effluent negotiations was "unprofessional" and resulted in "loss of community confidence and comprehensive planning abilities."[1] As to a prospective injunction,[2] the statute only

---

[1] This language is taken from Judge Wingate's order granting a preliminary injunction in the oft-referenced Bear Creek case. See generally, City of Madison v. Bear Creek Water Ass'n, Inc., 1986 WL 22353 (S.D. Miss. July 23, 1986) (preliminary injunction order is not available on Westlaw but the relevant excerpt is in the record

prohibits curtailment or limitation of water service "by inclusion of the area served." 7 U.S.C. § 1926(b). Because the Defendants did not actually violate the statute through their discussions with Rentech, Adams County Water does not have standing, at least under § 1926(b), to seek any relief associated with "loss of community confidence and comprehensive planning abilities."

Relatedly, the parties argued—admittedly at the suggestion of the Court—that the Defendants should not be allowed to escape adjudication of the sewer-effluent issue through voluntary

---

at docket no. 185-9). The Court merely notes that, judging simply from the first sentence provided by the Plaintiff, Judge Wingate was measuring the effect of actual, not theoretical, encroachment.

[2] In order for a court to grant permanent injunctive relief, a plaintiff must satisfy a four-factor test: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." See eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006) (citing Weinberger v. Romero—Barcelo, 456 U.S. 305, 311-13 (1982); Amoco Production Co. v. Gambell, 480 U.S. 531, 542, (1987)). The irreparable-injury factor, which is the factor addressed in the Adams County Water's presentation at the hearing, "is intended to describe the quality or severity of the harm necessary to trigger equitable intervention." Lewis v. S. S. Baune, 534 F.2d 1115, 1124 (5th Cir. 1976) (citation omitted). The parties have not adequately briefed this issue, but it is unlikely that Adams County Water suffered any irreparable harm related to the Rentech discussions. As an initial matter, these abstract assertions appear to be pure speculation. Moreover, there is no indication that these harms are traceable to the Defendant's conduct. Finally, these harms do not appear to be the sort of irreparable harms that would justify a permanent injunction. They are concrete "harms" only insofar as they are attended by the real, actual harm, that is, damage to its financial viability undermining its ability to carry out its mission.

cessation. See Hr'g Tr. at 50. 76; see also Friends of the Earth, Inc., 528 U.S. at 189. This mootness exception would be applicable if either Adams County Water or the United States could show that the Defendants intentionally mooted an agreement with Rentech in order to avoid adjudication. But not only have Adams County Water and the United States failed to offer any evidence that the Defendants were responsible for the demise of the deal, they have not produced evidence—or even suggested for that matter—that the Defendants' dealings with Rentech ever progressed beyond the theoretical. The Defendants do not appear to have voluntarily ceased anything because there was never anything definite to cease in the first place. In sum, there is nothing about the Rentech discussions that warrants the prospective equitable relief Adams County Water seeks.

But the main concern for Adams County Water appears to be the future harm it may suffer if the Court declines to grant prospective relief. At the hearing, Adams County Water contended that the Defendant's position on sewer effluent *could* harm its interests *if* another customer like Rentech seeks to do business in its area. Specifically, its representative explained that the Defendants *could* run a "dirty-water line" to the Adams County Correctional Facility or the country club, thereby "skimming the cream" off of its certificated areas. Hr'g Tr. at 44; see City of Madison, Miss. v. Bear Creek Water Ass'n, Inc., 816 F.2d 1057, 1060

5

(5th Cir. 1987). Instead of aiding the Plaintiff's cause, this concern highlights the speculative nature of the harm and illustrates the difference between this case and a potentially live controversy. The Court would seriously overstep its authority by allowing Adams County Water to turn this case into a dispute over those facilities, disputes which the parties appear to have already partially resolved. See id. at 60-61. While Adams County Water fears that its interests are in danger of imminent harm if the Court does not issue its requested injunction,[3] there is no evidence that the Defendants have any plans to provide sewer effluent to these or any other facility in Adams County Water's certificated areas.[4] See Aff. of Gardner ¶ 9, docket no. 143-1.

---

[3] It is not enough to insist that this issue "will recur" because the Defendants will not concede their legal position. Hr'g Tr. at 49. This type of argument was echoed by the Government at the hearing: "We don't know when or exactly how they would do it, but they certainly won't say that—won't agree that they won't do it again." Hr'g Tr. at 77. The Court cannot enjoin the Defendants from maintaining what amounts to a legal position on the interpretation of the Plaintiff's certificates of necessity and a Mississippi statute which may or may not be implicated in the future.

[4] Even if there was such a customer, it is not clear that the sewer-effluent issue would be ripe. The present case does not present a ripeness issue because Adams County Water has not articulated specific future harm that has the potential to ripen. Nevertheless, the policy undergirding the doctrine of ripeness is instructive. The ripeness doctrine instructs that a district court is to avoid entangling itself in abstract disagreements or to avoid premature adjudications of rules and regulations best suited for an administrative body. See Nat'l Park Hospitality Ass'n v. Dep't of Interior, 538 U.S. 803, 807-808 (2003) (quoting Abbott Labs. v. Gardner, 387 U.S. 136, 148–149 (1967)). The sewer-effluent dispute is an abstract disagreement pertaining to the enforcement of Mississippi rules and regulations best left to the Mississippi

Perhaps the best way to address standing in this case is from a redressability standpoint, which is the third prong of the standing test and a concept appropriately invoked by Adams County Water in its Complaint.[5] E.g., Samnorwood Indep. School Dist., 533 F.3d at 264-65. Presume that the Court chooses not to issue an injunction indicating whether it believes sewer effluent is or is not covered by Adams County Water's certificates of necessity, as will likely be the case. The question then would be what imminent non-theoretical harm would be left unredressed. Based on the evidence, there is none. There is no identifiable potential customer such as Rentech currently seeking sewer effluent in Adams County Water's certificated areas. And even if Adams County Water had identified such a customer, any consideration of how the situation would unfold with this customer is entirely speculative. It is not inconceivable that the Defendants would choose to

---

Public Service Commission and the Mississippi courts.

[5] The Complaint only once mentions the dirty-water issue, stating:

> [Adams County Water] would further show that defendants have clearly indicated in open meetings, through their duly authorized representatives, that [Adams County Water's] exclusive right to provide water to customers for compensation is limited in scope to drinking water only, thus allowing defendants to provide other water services to customers within [its] franchise area, all of which would be in violation of 7 U.S.C. § 1926(b). Therefore, [Adams County Water] seeks redress by way of damages, declaratory and injunctive relief.

Complaint ¶ 3.

collaborate with Adams County Water rather than become embroiled in an expensive lawsuit, as the one now before the Court.

But even if the Defendants did contract with a potential sewer-effluent customer, Adams County Water can invoke the jurisdiction of this Court and obtain an adequate remedy to protect its interests and the financial and policy interests of the United States.[6] Preliminary injunctions are routinely sought and granted in § 1926(b) suits, and they would certainly be available as possible remedy to Adams County Water and the United States. E.g., Bluefield Water Ass'n, Inc. v. City of Starkville, Miss., 577 F.3d 250 (5th Cir. 2009). Based on the evidence before the Court, if the Court addressed the sewer-effluent issue, it would be issuing a non-specific advisory opinion on an unresolved and important issue, best suited for the Mississippi Public Service Commission or the Mississippi courts, in order to protect Adams County Water from a theoretical harm. Issuing injunctive or declaratory relief would be an impermissible extension of this Court's Article III authority,

---

[6] Adams County Water suggested at the hearing that it would like to avoid having to file a second, potentially costly lawsuit. Hr'g Tr. at 64. This Court is not aware of precedent suggesting that having to file another lawsuit is a hardship weighing in favor of premature adjudication. Cf., Friends of the Earth, Inc., 528 U.S. at 192 n.5 ("[C]ourts should use caution to avoid carrying forward a moot case solely to vindicate a plaintiff's interest in recovering attorneys' fees."). If it were, then an eager plaintiff would be rewarded for filing a premature lawsuit rather than waiting for a live case in controversy to arise. The fault for bringing a premature lawsuit should not be placed at the feet of the defendant.

and for that matter, grounds for reversal. See Friends of the Earth, Inc., 528 U.S. at 193 ("Federal courts should aim to ensure 'the framing of relief no broader than required by the precise facts.'" (quoting Schlesinger v. Reservists Comm. to Stop the War, 418 U.S. 208, 222 (1974)); Golden v. Zwickler, 394 U.S. 103, 108 (1969).

**II. Adams County Water's Motions and the Legal Significance of its Certificates**

Adams County Water possesses certificates granting it the exclusive right to "construct, maintain and operate a water distribution system" in certain geographical areas. See, In re: Application of Adams County Water Association, Inc., U-1146 (Miss. Publ. Serv. Comm. Jan. 13, 1966) (order granting certificate of necessity), docket no. 1-2;[7] see Miss. Code Ann. § 77-3-12. Further, because it is a qualified association indebted to the United States, Adams County Water is entitled to 7 U.S.C. § 1926(b) protection in those geographical areas—a protection which has been consistently characterized as "sacrosanct." E.g., N. Alamo Water Supply Corp. v. City of San Juan, Tex., 90 F.3d 910, 915 (5th Cir.

---

[7] The Court notes that the language in the applicable orders granting the certificates of necessity are for the most part uniform, see generally docket nos. 1-2 through 1-8, but the order transferring the certificate of necessity from Pineview Water System, Inc., to Adams County Water specifically provides the right to "operate and maintain a sewer system." See In re: Joint Application of Adams County Water Association, Inc. And Pineview Water System, In.c, U-2389 (Miss. Publ. Serv. Comm. Sept. 14, 1972). The Court need not consider this plain language, however, because an injunction does not appear necessary in this case.

9

1996). Inasmuch as Adams County Water requests a general declaration that it possesses certain certificates giving it the exclusive right to operate "a water distribution system" in its certificated areas, and a statement that 7 U.S.C. § 1926(b)'s protection applies, those requests are granted.

The parties appear to understand, however, that a summary-judgment ruling as to whether the Defendants have impermissibly encroached on Adams County Water's certificated areas turns on whether the Court concludes that Adams County Water had "made services available" in its certificated area by virtue of its possession of the certificates. Having heard Adams County Water's argument on this legal issue, the Court concludes that Adams County Water has not "made services available" *as a matter of law*. As suggested in the May 3, 2013 Order, Mississippi law differs from Texas law on this point. That is, a holder of a certificate does not have an unqualified duty under Mississippi law to make services available in his certificated area, as the Fifth Circuit held that it does in Texas. Compare N. Alamo Water Supply Corp., 90 F.3d at 915-16 ("Under Texas law, the Certificate gives the Utility the exclusive right to serve the area within its CCN and obligates it 'to serve every consumer within its certified area and . . . render continuous and adequate service within the area or areas.'" (citing to Texas statutes)), with Shadburn v. Tishomingo Cnty. Water Dist., Inc., 710 So. 2d 1227, 1234 (Miss. Ct. App. 1998) ("Our Mississippi

Supreme Court has never required a utility company to provide water service to residents or landowners within the utility service area, regardless of cost."), and Capital Elec. Power Ass'n v. City of Canton, 274 So. 2d 665, 668 (Miss. 1973), and Ladner v. Miss. Publ. Utils. Co., 131 So. 78, 79 (Miss. 1930), and City of Greenwood v. Provine, 108 So. 284, 286 (Miss. 1926). The Court acknowledges Adams County Water's argument that the "statutory scheme" governing the issuance of the certificates, as understood and applied by the Mississippi Public Service Commission, is similar to, if not identical to, that of Texas.[8] Yet, as the Mississippi Court of Appeals has demonstrated, the courts, not the Mississippi Public Service Commission, have the final word on interpreting the reach of the certificates. See Shadburn, 710 So. 2d at 1234. Having been provided no case law to the contrary, the Court holds that Adams

---

[8] At the hearing, Adams County Water suggested that the similarities between Texas and Mississippi lie in the fact that both states issue certificates of necessity, whereas other states, like North Carolina or Ohio, do not issue certificates. Adams County Water suggested that this explains why other states have a "pipes in the ground" test while Mississippi simply looks to the geographical areas covered by the certificates. Hr'g Tr. at 12-13. The dispositive inquiry—at least in North Alamo—was not certificates *vel non*, but the reach of the certificates. That is, do the certificates impose an unqualified duty under state law to provides services in the certificated areas? The answer in Mississippi—unlike the answer in Texas—is no. In other words, the certificates of necessary do not have the same reach as they do in Texas, particularly for § 1926(b)'s purposes. This conclusion logically raises the question of the importance of possessing the certificates. But this Court, being Erie-bound, need not and should not delve further into an issue that was clearly decided by the Mississippi courts. The question in this § 1926(b) lawsuit is whether Adams County Water "made services available."

County Water did not make services available in the disputed areas simply because they possess the certificates. As for whether Adams County Water in fact made services available by virtue of having "pipes in the ground" before the Defendants began providing water services in those areas, the Court heard enough testimony at the hearing to conclude that this is a disputed issue of fact to be resolved at trial.

## CONCLUSION

With respect to the dispositive motions, **IT IS HEREBY ORDERED** that Adams County Water's Motion for Partial Summary Judgment [**docket no. 110**] is **DENIED** in part and **GRANTED** in part, as explained above. **IT IS FURTHER ORDERED** that Adams County Water's Supplemental Motion to Amend/Correct Motion for Partial Summary Judgment [**docket no. 136**] is **DENIED. IT IS FURTHER ORDERED** that Motion to Renew Motion to Strike by Adams County Water [**docket no. 136**] is **DENIED. IT IS FURTHER ORDERED** that the Defendants' Motion for Partial Summary Judgment [**docket no. 153**] is **DENIED. IT IS FURTHER ORDERED** Motion for Partial Summary Judgment by the United States of America [**docket no. 143**] is **DENIED.**

With respect to the remaining evidentiary motions, which were not directly addressed by the Court's discussion above, **IT IS HEREBY ORDERED** that Plaintiff's Second Motion in Limine to Exclude Testimony and Report of David Gardner [**docket no. 147**], which is a

Daubert motion, is **DENIED**. "Most of the safeguards provided for in Daubert are not as essential in a case such as this where a . . . judge sits as the trier of fact in place of a jury." Blaauw v. Superior Offshore Int'l, LLC, 2008 WL 4224808, at *22 (W.D. La. September 10, 2008) (alterations in the original) (quoting Gibbs v. Gibbs, 210 F.3d 491, 500 (5th Cir. 2000)). The Court takes Adams County Water's concerns under advisement and will afford this testimony no more weight than it deserves during at the upcoming bench trial. For the same reason, **IT IS FURTHER ORDERED THAT** Plaintiff's Second Motion in Limine to Exclude Testimony and Report of William H. Gillon, III [**docket no. 149**] is **DENIED**.

Finally, **IT IS FURTHER ORDERED** that Plaintiff's Motion to Strike Rebuttal [**docket no. 173**] is **DENIED**. The Defendants could not have produced the newspaper article to the Plaintiff before the discovery deadline expired because the article had not been written. Regardless, Adams County Water conceded that the Rentech deal is dead, rendering this objection moot. Tr. Hr'g at 44.

So **ORDERED**, this the 16th day of July, 2013.

       /s/ David Bramlette  
       **UNITED STATES DISTRICT JUDGE**